*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GLORIA KATO KARUNGI,

        Plaintiff/Counterdefendant-
        Appellant/Cross-Appellee,

UNPUBLISHED
August 19, 2021

v

No. 351165
Oakland Circuit Court
LC No. 2016-841198-DS

RONALD LEE EJALU,

        Defendant/Counterplaintiff-
        Appellee/Cross-Appellant.

Before: GADOLA, P.J., and JANSEN and O'BRIEN, JJ.

JANSEN, J. (*dissenting*).

For the reasons that follow, I respectfully dissent.

There were several indications at oral argument that this litigation is being pursued for improper purposes. First, when plaintiff's attorney was asked whether plaintiff still intended to undergo implantation of an embryo to have a child to help cure EKE's sickle cell anemia, plaintiff's attorney responded in the negative. "[A]s a general rule, this Court will not entertain moot issues or decide moot cases." *TM v MZ*, 501 Mich 312, 317; 916 NW2d 473 (2018) (quotation marks and citation omitted). "A moot case presents nothing but abstract questions of law which do not rest upon existing facts or rights." *Id*. (quotation marks and citation omitted). A moot case involves a judgment which "cannot have any practical legal effect upon a then existing controversy." *Id*. (quotation marks and citation omitted). Plaintiff's attorney stated that plaintiff wanted to make sure that she had the "option" to implant the embryos in the future, that plaintiff had most likely made inquiries into new forms of treatment for sickle cell anemia, and asserted that the destruction of the embryos was not hypothetical. However, despite the assertion by plaintiff's attorney, the panel clarified that any alleged intention by defendant to destroy the embryos is not at issue on appeal. This case has been pending for five to six years, and despite alleging that one purpose of implanting an embryo is to treat EKE's sickle cell anemia, plaintiff has no current plans to undergo this procedure. Therefore, there is no current controversy, and this case is moot. *Id*.

-1-

In light of this conclusion, it appears that this case is being litigated to support broader interests than those of the parties. At oral argument, defense counsel asserted that this case has been targeted by a public-interest law firm with a pro-life mission as a test case for determining whether embryos have "human" rights. Throughout the proceedings, plaintiff has advanced the argument that embryos are humans, not property. When asked whether plaintiff's case was being represented pro bono, plaintiff's attorney stated that she "believed" that plaintiff was paying, but she was not associated with the billing department of the law firm she was associated with, and did not know if a third party was paying for plaintiff's legal fees on her behalf. This conflicts with the evidence in the lower court record, in particular, the affidavit establishing plaintiff's indigency, resulting in the trial court dismissing the order requiring her to pay a security bond. Thus, it appears that this case is an improper and dishonest use of the Court to advance public interests, rather than litigate the rights of these parties.

Lastly, I continue to advance the reasons provided in my dissenting opinion of the initial appeal decided in this case. See *Karungi v Ejalu*, unpublished per curiam opinion of the Court of Appeals, issued September 26, 2017 (Docket No. 337152) (JANSEN, J., dissenting). I agree with the conclusions of the majority that the alleged "donor agreement" is unenforceable under the statute of frauds and irrelevant as it relates to artificial insemination rather than in vitro fertilization (IVF), and that the trial court properly held that it could not decide the dispute without the IVF clinic as a named party. There is no contract between the parties regarding the disposition of the remaining embryos. The parties are each in contract with the IVF clinic; however, plaintiff failed to produce a signed, written agreement pertaining to embryo implantation, the issue on appeal, and the IVF clinic has not been named as a party to the litigation.

However, I would ultimately affirm the decision of the trial court to dismiss plaintiff's motion for a custody determination based on the lack of authority to consider the custody of frozen embryos. Based on the previous opinion of this Court, the trial court determined that it was restricted to applying contract law to the issues under the law-of-the-case doctrine, and held that the parties would remain joint owners of the embryos until they reached an agreement. This Court may affirm the decision of the lower court when the right result is reached, although for the wrong reasons. *Forest Hills Co-operative v Ann Arbor*, 305 Mich App 572, 615; 854 NW2d 172 (2014). As stated in my previous dissenting opinion, there is no law in Michigan that supports the proposition that frozen embryos are persons subject to a custody determination. Thus, the trial court lacks legal authority to consider the disposition of embryos in the context of a custody case, and dismissal of plaintiff's motion was appropriate.

/s/ Kathleen Jansen